IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 11-0262-WS |
| | ) | |
| STANLEY M. WRIGHT, | ) | |
| MARY L. WRIGHT a/k/a | ) | |
|    MARY W. STRACHAN, a/k/a | ) | |
|    MARY W. COOK, and | ) | |
| JANEY GALBRAITH, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on motions in limine filed by all three defendants and on alternative motions to sever filed by Stanley Wright and Mary Wright. (Docs. 151, 156, 167). The motions were prompted by the government's notice of intent to present 404(b) evidence as to defendant Galbraith. (Doc. 132). The government has filed a consolidated response to the motions, (Doc. 175), which are ripe for resolution.[1]

Counts One and Nine of the third superseding indictment charge that Galbraith, who administered post-Katrina grants awarded the City of Bayou La Batre ("the City") by FEMA and HUD, conspired with one or both of her co-defendants to defraud the United States. According to the government, the City's mayor, Stanley Wright, corruptly and dishonestly hid his interest in property to be transferred to FEMA and corruptly and dishonestly influenced the award of housing assistance under a HUD grant. (Doc. 132 at 1-2). The government expects to show that Wright could not have so behaved "without

---

[1] The Court has not considered Galbraith's unauthorized reply brief. (Doc. 196).

[1]

the assistance of a corrupt grant administrator who was willing to assist him in exchange for maintaining the lucrative [grant administration] contracts." (*Id*. at 2).[2]

Count One of the third superseding indictment alleges that Stanley Wright owned 7.5 acres of land near a contemplated housing project to be paid for with FEMA grant funds, a right-of-way over which was needed in order to widen the turning lanes into the development. Stanley Wright transferred approximately .2 acre of his parcel to his daughter, Mary Wright, for no consideration. Eight days later, Mary Wright sold the parcel to the City, later transferring all the proceeds of the sale to Stanley Wright. Two overt acts are attributed to Galbraith: (1) she presented a funding request to the city council to pay Mary Wright for the acquisition; and (2) she told a council member that the transaction was legal and that the council should trust her opinion. (Doc. 180 at 5-7).

Count Nine alleges that the HUD grant required housing assistance to be distributed without bias, without duplication of benefits, and in accordance with a priority system then in place but that Stanley Wright ignored these rules and influenced the awarding of housing assistance to persons he favored and the tabling of applications from those he did not. The indictment alleges that Galbraith assisted in this endeavor by ignoring the rules and following Stanley Wright's directives about favoring some applications and tabling others. The indictment further alleges that, when the Office of Inspector General ("OIG") conducted an audit, Galbraith altered and omitted documents, and instructed her staff to do likewise, in order to conceal rules violations. The three overt acts attributed to Galbraith are three e-mail transmissions to the OIG. (Doc. 180 at 14-16).[3]

---

[2] Counts One and Nine charge the defendants with conspiring to defraud the United States of its right to performance "free from corruption [and] dishonesty." (Doc. 180 at 3, 12-13).

[3] Galbraith is also charged in six substantive counts, two for each of the three e-mail transmissions. (Doc. 180 at 16-20).

The government identifies four extrinsic acts it apparently wishes to place before the jury under Rule 404(b).[4] First, that in 1999, after the City's then-mayor advised Galbraith she needed to make a four-figure contribution to a foundation established by Governor Siegelman to push for establishment of an education lottery, Galbraith made a $2,000 contribution. Second, that in 2008 she made a $5,000 contribution to Stanley Wright's re-election campaign. Third, that in or around 1998, when a rival grant administrator told her he was upset she had been hired by the City to administer a state grant and told her another individual was also mad and that she should pay him $5,000 and appoint him as safety director on the project, she paid the individual $5,000. Fourth, that in or after 2006, she paid the City's engineer $60,000 to report back to her about any problems at the FEMA housing development being financed by the grant she was administering.

"A three step test is applied in determining the admissibility of extrinsic 404(b) evidence: (1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof so that the jury could find that the defendant committed the extrinsic act; and (3) the evidence must possess probative value that is not substantially outweighed by undue prejudice." *United States v. Barrington*, 648 F.3d 1178, 1186 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 1066 (2012). The government's proffer falters at the first step.

The government must initially identify the non-propensity purpose for which it offers the extrinsic evidence. The government says it offers the evidence to show that Galbraith's actions in this case "were knowing and willful and were not as a result of mistake or accident." (Doc. 132 at 4). It explains that Galbraith's history shows that she

---

[4] The extent of the government's proffer is rendered ambiguous by its representation that, in order to prove the extrinsic acts, it need rely only on statements Galbraith made in 1999 and 2000. (Doc. 175 at 5). If that is so, the government cannot be relying on the second and fourth listed extrinsic acts, both of which occurred long after 2000. At any rate, and as discussed in text, none of the four episodes can be admitted under Rule 404(b).

"acted dishonestly and corruptly" on these occasions, that she "was willing to conduct her business in a dishonest and corrupt manner," and that "act[ing] dishonestly and corruptly" is her "pattern of business," such that her actions herein were not accidental or mistaken. (*Id*. at 2, 4).

The government acknowledges that all of the crimes with which it has charged Galbraith, substantive and otherwise, require it to prove that she acted with "willful intent." (Doc. 175 at 3). As noted, the government offers the extrinsic evidence to show that Galbraith's actions were willful, (Doc. 132 at 4), so it offers the evidence to establish her intent, which is a non-character purpose under Rule 404(b). The government also offers the evidence to show that Galbraith did not act by mistake or accident (also permissible purposes under Rule 404(b)), but it concedes it does so only because "[a]ctions done by mistake or by accident are inconsistent with willful intent," (Doc. 175 at 3), such that its rationales for offering the evidence collapse into a single one concerning Galbraith's intent. While this is a proper purpose under Rule 404(b), the government's proposed evidence is not relevant to Galbraith's intent.

"The test for relevancy under this part of the [404(b)] analysis is identical to the test established by rule 401 of the Federal Rules of Evidence." *United States v. Williams*, 816 F.2d 1527, 1531 (11th Cir. 1987). Under that rule, "'[r]elevant evidence' means evidence having any tendency to make the existence of [Galbraith's intent] more probable … than it would be without the evidence." Fed. R. Evid. 401. More particularly, "[s]imilarity of the extrinsic acts to the offenses with which [the defendant] is charged is the standard by which relevancy is measured under rule 404(b)." *Id*.

"Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). As noted, the government identifies the critical intent for the subject offenses as willfulness. (Doc. 175 at 3). "The word 'willfully' means that the act was done voluntarily and

purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law." Eleventh Circuit Pattern Jury Instructions (Criminal) at 35, Basic Offense Instruction 9.1A (2010).

For the extrinsic evidence to be relevant, then, Galbraith must have engaged in the extrinsic conduct with the intent to do something the law forbids. The government does not even pretend to have evidence that Galbraith made political contributions and other payments with the intent to do something the law forbids. Instead, it notes that Rule 404(b) allows the introduction of other "crimes, wrongs *or acts*" and concludes that it "need not prove that Galbraith's previous actions were illegal." (Doc. 175 at 3 (emphasis added)). Rule 404(b) reads as the government quotes it, but that does not mean that any act in any situation falls within its parameters. When, as here, the evidence is offered to prove the defendant's intent and that intent is the intent to do something the law forbids, the extrinsic evidence must also involve the intent to do something the law forbids. Since the government has no evidence that Galbraith's past conduct was illegal, it cannot show that Galbraith engaged in this conduct with the intent to disobey or disregard the law.

The government's position is not improved by its frequent and apparently random switching of nomenclature back and forth from "willful" to "corrupt" and "dishonest." Even indulging the dubious assumption (unarticulated by the government) that corruption and dishonesty are mental states, and even indulging the further assumption (vaguely articulated by the government) that conduct can be corrupt and dishonest but still violate no law, the government has no evidence that Galbraith's previous conduct was corrupt or dishonest.

As to the political contributions, the government concedes that its "evidence of corruption" extends no further than supporting the inference that Galbraith intended her donations to "influence" those who awarded grants (or more precisely, those who influenced those who awarded grants). (Doc. 132 at 2, 3-4). There is no allegation of a quid pro quo and no explanation how an Alabama citizen's lawful political contribution

to a state or local cause or candidate becomes corrupt or dishonest simply because (as is often the case) the citizen does not act exclusively from altruistic motivation but hopes her generosity will be remembered.

As to the 1998 payment to a disgruntled competitor's favorite, the government describes Galbraith as succumbing to "extortion" in order to keep the competitor from "interfering with her contracts." (Doc. 132 at 3, 4). The government does not explain its remarkable proposition that it is the victim of extortion who acts corruptly or dishonestly. Since the government concedes that Galbraith made the payment "from her own funds," (*id*. at 3), she plainly inflicted no loss on others.

As to the payments to Bryant, the government identifies not a single particle of evidence that they were made for a corrupt or dishonest purpose. Galbraith states that the payments were made not to Bryant but to his incorporated engineering/inspection services business, over a course of two years, in exchange for legitimate inspection and troubleshooting services at over 100 houses within the FEMA development, services that Bryant's corporation has a long history of providing by contract for the City and others. (Doc. 167 at 4-5). Given full opportunity to challenge Galbraith's proffer or make its own, the government stood mute in its responsive brief.

The government's position likewise is not improved by packaging the extrinsic evidence as showing that Galbraith's actions in this case were not the product of accident or mistake. First, as noted above, this is really only an alternative way of showing Galbraith's intent. But even if considered as a separate 404(b) ground, the evidence cannot be relevant for this purpose without evidence that the uncharged conduct and the charged conduct share a threshold degree of similarity. *E.g., United States v. Lamons*, 532 F.3d 1251, 1266 (11th Cir. 2008) ("The existence of prior *similar* wrongdoings reduces the plausibility of a defense of inadvertence or accident [and] is clearly relevant to the absence of mistake ….") (emphasis added, internal quotes omitted). Put another way, there must be a "logical connection" between the prior conduct and the absence of

mistake or accident on the present occasion. *United States v. Jernigan*, 341 F.3d 1273, 1281 (11th Cir. 2003).

The conduct itself plainly does not satisfy this threshold. There is no inherent similarity between making a campaign contribution or paying a private citizen and presenting false statements to local and federal officials. Likewise, there is no logical connection between the former conduct and an absence of mistake in engaging in the latter conduct. The only potential parallel between the former and the latter, and the only one advanced by the government, is that all actions were undertaken corruptly and dishonestly. But as just detailed, the government lacks evidence of corruption or dishonesty in connection with its proposed extrinsic evidence, so it cannot come in under the guise of showing lack of accident or mistake.

Because the proposed evidence has no relevance to the 404(b) purposes for which it is offered, it cannot be admitted as 404(b) evidence. Because this lack of relevance precludes introduction of the evidence under Rule 404(b), it is unnecessary to assess the second and third requirements for presenting it.

For the reasons set forth above, the defendants' motions in limine are **granted**. The government will not be permitted to introduce under Rule 404(b) any of the extrinsic evidence identified in its notice of intent and discussed in this order.[5] The motions to sever are **denied as moot**.

DONE and ORDERED this 12th day of March, 2012.

> s/ WILLIAM H. STEELE
> CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The Court has and expresses no opinion whether any or all of this evidence may be admitted via some other route.