IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 11-0262-WS |
| | ) | |
| STANLEY M. WRIGHT, | ) | |
| MARY L. WRIGHT a/k/a | ) | |
|     MARY W. STRACHAN, a/k/a | ) | |
|     MARY W. COOK, and | ) | |
| JANEY GALBRAITH, | ) | |
| | ) | |
|     **Defendants.** | ) | |

**ORDER**

This matter is before the Court on the motion of defendant Stanley Wright to dismiss Counts Seven and Eight of the third superseding indictment. (Doc. 211). The government has filed a response, (Doc. 240), and the motion is ripe for resolution.

Count Seven charges that Wright took four specified actions against Bayou La Batre law enforcement officer D.W. with the intent to retaliate against him for providing truthful information to the FBI regarding Wright's activities concerning FEMA and HUD grant money and relating to the possible commission of the federal offenses of conspiracy to defraud the United States and theft from an organization receiving federal funds, in violation of 18 U.S.C. § 1513(e).[1] Count Eight charges that Wright took the same four

---

[1] The four actions are: (1) "[o]rdering that D.W. be arrested for possessing an assigned police vehicle while he was on sick leave"; (2) "[r]emoving D.W. from his assigned duties as supervisor of major crime investigations and supervisor of patrol officers, and assigning him to work as a uniformed patrol officer"; (3) "[d]emanding that the Alabama Bureau of Investigation polygraph D.W. and investigate him for theft of money and drugs from the Bayou La Batre Police Department"; and (4) "[o]rdering that D.W. not participate in federal investigations, including investigations with the Drug Enforcement Administration, thereby depriving D.W. of the ability to earn overtime pay reimbursed to Bayou La Batre by the Organized Crime and Drug Enforcement Task Force." (Doc. 180 at 10).

actions in an attempt to intimidate, threaten and corruptly persuade D.W., with the intent to hinder, delay or prevent D.W.'s communicating information to law enforcement relating to the possible commission of the same federal offenses, in violation of 18 U.S.C. § 1512(b)(3). Both counts charge that Wright's actions occurred "[f]rom January of 2011 through June of 2011." (Doc. 180 at 10-12).

Wright argues that Counts Seven and Eight are duplicitous in that they each charge four separate acts and three separate possible federal offenses,[2] for a total of twelve separate charged crimes within each count.[3]

"A count in an indictment is duplicitous if it charges two or more separate and distinct offenses." *United States v. Seher*, 562 F.3d 1344, 1360 (11th Cir. 2009) (internal quotes omitted). "The key issue to be determined is what conduct constitutes a single offense," and for that "we must look to congressional intent." *Id.* (internal quotes omitted).

"[I]t is well settled that the test for determining whether several offenses are involved is whether identical evidence will support both of them, and if any dissimilar facts must be proved, there is more than one offense." *Bins v. United States*, 331 F.2d 390, 393 (5th Cir. 1964) (citing *Blockburger v. United States*, 284 U.S. 299 (1932)). In *Bins*, a single count charged that the defendant, as part of a "single transaction" with the Federal Housing Administration, made knowingly false statements in two different documents a few days apart, in violation of 18 U.S.C. § 1010.[4] Because Section 1010

---

[2] Wright treats conspiracy to defraud as to the FEMA grant as an offense separate from conspiracy to defraud as to the HUD grant, consistent with the government's charging of these conspiracies separately as Counts One and Nine.

[3] Wright asserts that each count embeds 24 separate charged crimes, (Doc. 210 at 2), but his reasoning suggests a figure of twelve offenses per count (four actions times three possible underlying federal offenses).

[4] The defendant was charged in a single count with making false statements in a Form 2004G on December 24 and with making false statements in a Form 2004C on December 29. He (Continued)

criminalizes the making of "any statement" known to be false, "[t]he filing of each false document would constitute a crime, and each should be alleged in a separate and distinct count of the indictment," with the failure to do so rendering the count "duplicitous." *Id*.

Under the *Bins* test, Count Seven is duplicitous. A crime occurs under Section 1513(e) when "any action" is taken against a protected person with the requisite intent and harmfulness. Here, four such actions were allegedly taken with such an intent over a six-month period, and each supports a crime on non-identical evidence.[5] To paraphrase *Bins*, "the [taking] of each [harmful action] would constitute a crime, and each should be alleged in a separate and distinct count of the indictment."

Under *Bins*, Count Eight is likewise duplicitous. A crime occurs under Section 1512(b) when the defendant "uses intimidation, threatens or corruptly persuades" a protected person (or attempts to do so) with the requisite intent. Each of the four discrete actions charged in the indictment – on average, one action every two months – represents a separate use of intimidation, threat or corrupt persuasion against D.W., and each supports a crime on non-identical evidence and so constitutes a separate offense under *Bins*.

As noted, "[i]n determining the parameters of an offense, we must look to congressional intent." *United States v. Schlei*, 122 F.3d 944, 977 (11th Cir. 1997). "Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this congressional choice." *Sanabria v. United States*, 437 U.S. 54, 70 (1978). It would thus presumably be possible for Congress to intend that what appear to be multiple offenses under the *Bins* test and the statutory language nevertheless

---

was likewise charged in a single count with making false statements in a Form 2004G on June 30 and with making false statements in a Form 2004C on July 7. 331 F.2d at 392-93.

[5] All elements of a crime concurred when Wright ordered that D.W. be arrested. All elements of a crime again concurred when Wright re-assigned D.W., and so forth.

represent a single instance of "the allowable unit of prosecution." *Id*. (internal quotes omitted). *Cf. Seher*, 562 F.3d at 1360 ("[E]ven if two statutory provisions punish the same offense under the *Blockburger* test, multiple punishments would be permissible if Congress clearly intended that."). The government, however, has pointed to no evidence that Congress harbored a secret intent to combine discrete wrongful acts under Section1512(b) or under Section 1513(e) into a single offense.

The government does assert that the four acts are appropriately charged in a single count because they are part of a "continuing scheme." (Doc. 240 at 2). The government relies for this principle on Second Circuit cases. Under that line of authority, "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Olmeda*, 461 F.3d 271, 281 (2nd Cir. 2006) (internal quotes omitted). The government cites, and the Court has located, no Eleventh Circuit opinion embracing such a principle. On the contrary, the Second Circuit has itself expressly recognized that its "continuing scheme" jurisprudence is irreconcilable with *Bins*. *United States v. Aracri*, 968 F.2d 1512, 1518 (2nd Cir. 1992). This is understandable, since *Bins* ruled as follows:

> Nor is it of any consequence that all of the documents referred to in each count are part of a single transaction. The documents were executed on different dates. Whether a continuous transaction results in the commission of but a single offense or separate offenses is not dependent on the number of unlawful motives in the mind of the accused, but is determined by whether separate and distinct prohibited acts, made punishable by law, have been committed.

331 F.2d at 393. The Second Circuit has rejected the *Bins* approach. "The Eleventh Circuit, however, has adhered to the *Bins* court's analysis." *Schlei*, 122 F.3d at 979 (rejecting *Aracri* on this basis). Thus, that a single continuing scheme with a single motive of retaliation (Count Seven) or intimidation (Count Eight) may have underlain Wright's periodic actions against D.W. does not transform the multiple charged offenses under each count into a single offense under each or permit the multiple offenses to be charged in a single count. Wright allegedly committed four "separate and distinct

prohibited acts, made punishable by law," which demonstrates the existence of multiple offenses under Eleventh Circuit precedent regardless of any unifying motive.

While usually employed in evaluating a limitations defense, the doctrine of "continuing offenses" has occasionally been invoked to refute a claim that a count is duplicitous.[6] An offense cannot be continuing, however, "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie v. United States*, 397 U.S. 112, 115 (1970). The government identifies nothing in the language or nature of Section 1512(b) or Section 1513(e) that would support the conclusion that they are of that rare breed of statute establishing a continuing offense. On the contrary, while mentioning *Toussie* and its doctrine, the government admits it "is not alleging that either of the statutes alleged in Counts Seven and Eight are continuing offenses." (Doc. 240 at 4). The government's concession removes any argument that the duplicity of Counts Seven and Eight can be eliminated under a theory of continuing offense.

Finally, the government argues that Counts Seven and Eight simply "alleg[e] multiple means by which a single offense was committed." (Doc. 240 at 2). It is true that, "[w]here a penal statute … prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment, … the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense[, and] [t]he conjunctive allegations do not render the indictment duplicitous." *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989). Thus, for example, embezzlement and conversion, as listed in 18 U.S.C. § 641, "simply constitute two separate ways in which a violation of [the statute] may occur, not two separate crimes."

---

[6] *See United States v. Rivera*, 77 F.3d 1348, 1351-52 (11th Cir. 1996) (because possession of a firearm (absent proof of a break in possession) is a continuing offense, a single count charging possession of a firearm by a felon on August 12, 1994 and February 5, 1995 was not duplicitous).

*Id*. at 1574. Wright's objection to Counts Seven and Eight, however, does not fit the *Burton* model. Wright does not complain that these counts parrot the language of the statutes by listing multiple ways by which they may be violated.[7] Instead, he argues that the counts list multiple specific actions he allegedly took at various times, any of which on its own would constitute a completed crime.

While the four charged actions give rise to four separate offenses under Count Seven and another four separate offenses under Count Eight, the indictment's identification of multiple possible federal offenses as to which D.W. provided or attempted to provide information does not raise additional problems of duplicity. In *Seher*, the Eleventh Circuit ruled that 18 U.S.C. § 1956(a)(3) – which criminalizes the conducting of a financial transaction involving property with a threshold relation to specified unlawful activity, when the transaction is conducted with any of three specified intents – does not thereby establish three crimes but "a single offense of money laundering with alternative mental states, subject to only one punishment." 562 F.3d at 1362. Thus, several counts of the indictment, each charging the defendant with violating Section 1956(a)(3) while holding two of these mental states, were not duplicitous. *Id*. In the same way, Section 1512(b) and Section 1513(e) each creates a single offense (of intimidation or retaliation, respectively), with myriad potential underlying federal offenses to which the witness's information could relate. As in *Seher*, these sections do not create a separate offense for each underlying federal crime as to which a given piece of information may relate.[8]

---

[7] Section 1512(b) criminalizes the use of intimidation, threats or corrupt persuasion to certain illicit ends, and Count Eight lists each of these means of violating the statute. (Doc. 180 at 11). Had Wright asserted that this listing rendered Count Eight duplicitous, *Burton* would require rejection of his position.

[8] It is not clear why Wright would wish for such a construction, since it would expose him and other defendants to as many convictions for a single act of retaliation or intimidation as the government can divine possible federal crimes relating to the witness's information – three in
(Continued)

Wright posits that the duplicity of Counts Seven and Eight demands their dismissal. (Doc. 210 at 4). However, "[t]he entire count should not be dismissed when a less drastic ruling will suffice," and "[t]h[e] error [of duplicity] would … be harmless if the United States were required to elect upon which charge it would proceed." *United States v. Goodman*, 285 F.2d 378, 380 (5th Cir. 1960). A forced election by the government has been repeatedly observed to be an appropriate means of curing duplicity. *E.g., United States v. Salinas*, 654 F.2d 319, 326 (5th Cir. 1981), *overruled on other grounds, United States v. Adamson*, 700 F.2d 953 (11th Cir. 1983); *United States v. Hicks*, 529 F.2d 841, 843-44 (5th Cir. 1976); *Thomas v. United States*, 418 F.2d 567, 568 (5th Cir. 1969); *Reno v. United States*, 317 F.2d 499, 502 (5th Cir. 1963); *Goodman*, 285 F.2d at 380.

The Court concludes that a pretrial election by the government is the appropriate means of curing the duplicity of Counts Seven and Eight. It would be inappropriate to dismiss these counts and allow the government to seek a fourth superseding indictment including eight counts in place of these two, both because dismissal is discouraged and because the government already has had four opportunities to plead these counts properly and should not be permitted to penalize Wright for its repeated failure to do so.

For the reasons set forth above, Wright's motion to dismiss Counts Seven and Eight, construed to include a motion to compel election, is **granted in part**. The government is **ordered** to file and serve, on or before **April 20, 2012**, a document electing which one of the four actions listed in note 1 of this opinion is the single one on

---

this case but potentially dozens in another. *Cf. Seher*, 562 F.3d at 1362 (noting the bizarre results that would flow from acceptance of the defendant's duplicity argument).

which it will rely at trial as establishing a violation of Sections 1512(b) and 1513(e).[9] To the extent Wright seeks dismissal of Counts Seven and Eight, his motion is **denied**.

DONE and ORDERED this 12th day of April, 2012.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] The trial judge may require the government to redact the third superseding indictment before it reaches the jury. *See Hicks*, 529 F.2d at 843-44. It appears that such redaction would not constitute an impermissible amendment of the indictment. *Id.*